1  ERIN N. BASS (SBN 325090)
   DENTONS US LLP
2  601 South Figueroa Street, Suite 2500
   Los Angeles, California 90017-5704
3  Telephone: (213) 623-9300
   Facsimile: (213) 623-9924
4  erin.bass@dentons.com

5  JESSICA PETERSON (SBN 329740)
   DENTONS US LLP
6  1999 Harrison Street. Suite 1300
   Oakland, California 94612
7  Telephone: (415) 267-4000
   Facsimile: (415) 267-4198
8  jessica.peterson@dentons.com

9  Attorneys for Defendant
   THE LAGUNITAS BREWING COMPANY

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12

13
   TREVOR COFFEY, an individual, on behalf of      Case No.
14 himself and on behalf of all persons similarly
   situated                                         NOTICE OF REMOVAL OF A CIVIL
15                                                   ACTION
                        Plaintiffs,
16
            v.
17
   THE LAGUNITAS BREWING COMPANY, a
18 California Corporation; and DOES 1 to 50,
   inclusive,
19
                        Defendants.
20

21         TO THE CLERK OF THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT

22 OF CALIFORNIA, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

23         PLEASE TAKE NOTICE that Defendant The Lagunitas Brewing Company ("Lagunitas")

24 removed the above-entitled action to this Court from the Superior Court of the State of California,

25 County of Sonoma pursuant to 28 U.S.C. § 1441. Lagunitas invokes this Court's original

26 jurisdiction under 28 U.S.C. § 1332(d) (Class Action Fairness Act). Lagunitas submits this Notice

27 of Removal without waiving any defenses to the claims asserted by Plaintiff Trevor Coffey

28

                                              -1-
   CASE NO.                                          NOTICE OF REMOVAL OF CIVIL ACTION

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CA 94612
(415) 267-4000

against Defendant Lagunitas and without conceding that Plaintiff has pleaded any claims upon which relief can be granted. This removal is based on the following grounds:

**I.    Procedural Background**

On August 9, 2022, Plaintiff Trevor Coffey filed a Class Action Complaint against Lagunitas in the Superior Court of the State of California for the County of Sonoma, captioned *Trevor Coffey v. Lagunitas, and Does 1 through 50, inclusive*, under Case No. SCV-271412 (the "State Court Action"), which sets forth the following ten of causes of action: (1) unfair competition, (2) failure to pay minimum wages; (3) failure to pay overtime wages; (4) failure to provide required meal periods; (5) failure to provide required rest periods; (6) failure to reimburse employees for required business expenses; (7) failure to provide wages when due; (8) failure to provide accurate itemized wage statements; (9) failure to provide gratuities; and (10) unlawful deductions.

In the State Court Action, Plaintiff filed a Proof of Service attesting to personal service on Lagunitas' agent for service on December 15, 2022 of the Complaint, the Summons, and Civil Cover sheet – true and correct copies of which are attached as Exhibit A. A true and correct copy of the Proof of Service along with some additional documents purportedly served on Lagunitas are attached as Exhibit B.[1]

On December 28, 2022, Plaintiff filed a case management conference statement. The case management conference was scheduled for January 12, 2023, but later continued to March 30, 2023. A true and correct copy of Plaintiff's case management conference statement is attached as Exhibit C. A true and correct copy of the State Court's tentative ruling designating this case as complex and rescheduling the case management conference is attached as Exhibit D.

Lagunitas' response to the Complaint is not yet due, and Lagunitas has not yet responded to the Complaint.

Exhibits A-D constitute all of the pleadings that have been filed or served in this action as of the date of the filing of this Notice of Removal.

---

[1] It is not yet known if Lagunitas' agent for service, in fact, received service, and Lagunitas is still investigating. Lagunitas learned of the complaint through a public records search.

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CA 94612
(415) 267-4000

1

**II.     Removal is Timely**

2

Plaintiff purportedly served Lagunitas with the Complaint on December 15, 2022 – thus,

3

the present Notice of Removal is timely under 28 U.S.C. §§1446(b) and 1453. *Murphy Bros. v.*

4

*Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999). No previous Notice of Removal has been filed

5

or made with this Court.

6

**III.     Notice**

7

Lagunitas will promptly serve this Notice of Removal on all parties and promptly file a

8

copy of this Notice of Removal with the Clerk of the Superior Court, County of Sonoma, as

9

required by 28 U.S.C. § 1446(d).

10

**IV.     Plaintiff's Allegations**

11

Plaintiff's Complaint alleges a putative class of "all persons who are or previously were

12

employed by Defendant in California and classified as non-exempt employees at any time during

13

the class period beginning four years prior to the filing of this Complaint [on August 9, 2022] and

14

ending on the date as determined by the Court."

15

Plaintiff alleges ten claims on behalf of himself and the putative class members: (1) unfair

16

competition, (2) failure to pay minimum wages; (3) failure to pay overtime wages; (4) failure to

17

provide required meal periods; (5) failure to provide required rest periods; (6) failure to reimburse

18

employees for required business expenses; (7) failure to provide wages when due; (8) failure to

19

provide accurate itemized wage statements; (9) failure to provide gratuities; and (10) unlawful

20

deductions. Ex. A (Complaint) at ¶¶14-47.

21

**V.     This Court has Original Subject Matter Jurisdiction Under the Class Action Fairness Act.**

22

Plaintiff brings this action as a putative class action. Ex. A (Complaint) at ¶ 48. Removal

23

under the Class Action Fairness Act ("CAFA") is proper pursuant to 28 U.S.C. §§ 1332(d), 1441,

24

1446, and 1453 because (1) the amount in controversy by the Complaint exceeds, in the

25

aggregate, $5,000,000, exclusive of interest and costs; (2) the aggregate number of putative class

26

members in the proposed class exceeds 100 putative class members; and (3) diversity of

27

citizenship exists between at least one putative class member and the named Defendant in this

28

matter. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453; *United Steel, Paper & Forestry, Rubber,*

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CA 94612
(415) 267-4000

CASE NO.                                                                    NOTICE OF REMOVAL OF CIVIL ACTION

1    *Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602

2    F.3d 1087, 1089–90, 1090 n.2 (9th Cir. 2010). Although Lagunitas denies Plaintiff's factual

3    allegations and denies that Plaintiff or the class he purports to represent are entitled to the relief

4    requested, all requirements for jurisdiction under CAFA have been met in this case.

5          **A.     The Putative Class Has More than 100 Members**

6          To remove under CAFA, the aggregate number of putative class members in all proposed

7    classes must be greater than 100. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B); *United Steel*, 602 F.3d

8    at 1090, 1090 n.2.

9          The proposed class period is four years preceding the Complaint's filing on August 9,

10   2022 (*i.e.*, beginning on August 9, 2018), up until the time that notice of the class action is

11   provided to the class. Ex. A (Complaint) at ¶ 8. As of this filing, Lagunitas employed

12   approximately 438 nonexempt employees in California during the proposed class period.

13   Declaration of Nicole Chosa ("Chosa Decl.") ¶ 2.

14         **B.     Minimal Diversity of Citizenship Exists.**

15         To satisfy CAFA's diversity requirement, a party seeking removal need only show that

16   minimal diversity exists—that is, one putative class member is a citizen of a state different from

17   any defendant. 28 U.S.C. § 1332(d)(2)(a) (under CAFA's minimal diversity requirements,

18   diversity exists where "any member of a class of plaintiffs is a citizen of a State different from

19   any defendant"); *United Steel*, 602 F.3d at 1090–91 (holding that to achieve its purposes, CAFA

20   provides expanded original diversity jurisdiction for class actions meeting the minimal diversity

21   requirement set forth in 28 U.S.C. § 1332(d)(2)).

22         For diversity purposes, a corporation is deemed to be a citizen of any state under whose

23   laws the corporation is incorporated and of the state where it has its principal place of business.

24   28 U.S.C. § 1332(c)(1). Lagunitas is incorporated under the laws of the state of California. Ex. A

25   (Complaint) ¶ 1, Chosa Decl. ¶ 3. Lagunitas's headquarters and principal place of business is in

26   Petaluma, California. Chosa Decl. ¶ 4. Therefore, Lagunitas is a citizen of the State of California.

27         It is not necessary for DOES 1 through 50 to join in this removal as they have been sued

28   under fictitious names, have not been served or received the Summons or the Complaint, and,

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CA 94612
(415) 267-4000

-4-

1  under 28 U.S.C. § 1441(b)(1), are disregarded for purposes of removal and are not proper parties

2  in this Court.

3      "An individual is a citizen of the state in which he is domiciled. . . ." *Boon v. Allstate Ins.*

4  *Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265

5  F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is

6  determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church*

7  *of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750

8  (9th Cir. 1986)).

9      Lagunitas has identified at least three proposed class members that, as of the date the

10  complaint was filed, are domiciled in states other than California. Chosa Decl. ¶ 5. First, Jesse

11  Albrecht was employed by Lagunitas in non-exempt positions in California from approximately

12  May 26, 2015 to March 11, 2021 (when he was promoted to an exempt position). Chosa Decl. ¶

13  6. On or around January 3, 2022, Mr. Albrecht transferred to a position in Lagunitas's Chicago,

14  Illinois, brewery where he currently works and, since that time, has lived in Illinois.  *Id*. Second,

15  Tyler Faith was employed by Lagunitas in non-exempt positions in California from

16  approximately January 5, 2020 to March 12, 2020. Chosa Decl. ¶ 7. On or around March 13,

17  2020, Mr. Faith resigned, stating that he wanted to go home to Maryland. *Id*. A few days later, he

18  e-mailed the HR department to update his mailing address for purposes of mailing him his final

19  paycheck, which address is in Maryland. *Id*. Third, Allison Love was employed by Lagunitas in

20  non-exempt positions in California from approximately November 16, 2017 to February 1, 2020

21  (when she transferred to an exempt position). Chosa Decl. ¶ 8. On or around June 1, 2021, Ms.

22  Love resigned and advised the Company of her new mailing address in Oregon. *Id*.

23      Accordingly, at least three putative class members are diverse for CAFA minimal

24  diversity jurisdiction purposes. As a result, diversity jurisdiction exists under CAFA. 28 U.S.C. §

25  1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of

26  plaintiffs is a citizen of a State different from any Defendant").

27

28

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CA 94612
(415) 267-4000

-5-

CASE NO.                                    NOTICE OF REMOVAL OF CIVIL ACTION

1

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CA 94612
(415) 267-4000

**C.    The Amount in Controversy Exceeds $5,000,000.**

Pursuant to CAFA, the claims of the individual members in a putative class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). Plaintiff may not avoid removal to federal court under CAFA's $5,000,000 amount in controversy requirement by expressly alleging or subsequently stipulating that damages fall below that sum. *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1347 (2013). Because here Plaintiff has not expressly pled a specific amount of damages, Lagunitas need only show that it is more likely than not that the amount in controversy exceeds $5,000,000. *See Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 788-89 (9th Cir. 2018); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).

A removing party seeking to invoke CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" within the removing party's notice of removal. *See Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S. Ct. 547, 554 (2014). In the case of a dispute, Lagunitas' burden to establish the amount in controversy is the preponderance of the evidence standard. *See id.; see also Jordan v. Nationstar Mortg., LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart Cherokee* for the proposition that there is no anti-removal presumption against CAFA cases). "If a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." Senate Judiciary Report, S. REP. 109–14, at 42 (2005) (citation omitted).

A removing defendant is "not required to comb through its records to identify and calculate the exact frequency of violations." *Oda v. Gucci Am., Inc.,* No. 2:14-CV-07469-SVW, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015); *see Mackall v. Healthsource Glob. Staffing, Inc.,* No. 16-CV-03810-WHO, 2016 WL 4579099, at *3 (N.D. Cal. Sept. 2, 2016) ("[T]he burden to establish the amount in controversy by a preponderance of the evidence does not require the defendant to 'research, state, and prove the plaintiff's claims for damages.'"); *Sanchez v. Russell Sigler, Inc.,* No. CV1501350ABPLAX, 2015 WL 12765359, at *2 (C.D. Cal. Apr. 28, 2015)

-6-

("[A] removing defendant is not obligated to research, state and prove the plaintiff's claims for damages.") (citation omitted); *see also LaCross v. Knight Transport. Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable"); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy"). The ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint, not what a defendant will actually owe. *LaCross*, 775 F.3d at 1202 (explaining that courts are directed "to first look to the complaint in determining the amount in controversy") (citation omitted). Under *Dart Cherokee*, a removing defendant is not required to submit evidence in support of its removal allegations. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 963 (9th Cir. 2020); *Craig v. Universum Commc'ns, Inc.,* No. 20-CV-01284-HSG, 2020 WL 4590597, at *3 (N.D. Cal. Aug. 11, 2020) ("Defendant is not required to submit outside evidence[.]").

Although Lagunitas denies Plaintiff's factual allegations and denies that Plaintiff or the putative class he seeks to represent is entitled to any relief, Plaintiff's allegations have more likely than not put into controversy an amount that exceeds the $5,000,000 threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).[2] This section addresses each of Plaintiff's claims in turn.

---

[2] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint. Lagunitas references to potential damage amounts based on Plaintiff's allegations are provided solely for establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Lagunitas maintains that each of Plaintiff's claims are without merit and that Lagunitas is not liable to Plaintiff or any putative class member. In addition, Lagunitas denies that liability or damages can be established on a classwide basis. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Commc'n's, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CA 94612
(415) 267-4000

CASE NO.                                                    NOTICE OF REMOVAL OF CIVIL ACTION

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CA 94612
(415) 267-4000

1

### 1.    Failure to pay minimum wages

Plaintiff alleges that Lagunitas required proposed class members "to work off-the-clock before and after their shifts." Ex. A (Complaint) ¶ 26. Under Labor Code section 1194, employers must pay their employees the state minimum wage for all hours worked. Assuming arguendo that the proposed class members were required to work off the clock for 10 to 15 minutes before and/or after their shift, for a total of roughly 1 hour per week, Plaintiff and the putative class members are potentially entitled to approximately **$465,981.54** for Plaintiff's unpaid minimum wage claim (1 hour per week * 438 putative class members * 75.56 weeks (average number of weeks proposed class members worked during the class period) * $14.08 (average minimum wage in Petaluma, California during class period)). Chosa Decl., ¶¶ 9-10.

Even assuming that only 75% of the class members worked off the clock, the potential damages would be approximately **$350,018.10** for Plaintiff's unpaid minimum wage claim (1 hour per week * 329 putative class members * 75.56 weeks (average number of weeks proposed class members worked during the class period) * $14.08 (average minimum wage in Petaluma, California during class period)). *Id.*

Additionally, according to Labor Code Section 1194.2, an employer that fails to pay an employee the minimum wage shall be subject to liquidated damages in an amount equal to the wages unlawfully unpaid. Based on the assumptions described above, the liquidated damages for Plaintiff's unpaid minimum wage claim would be **$350,018.10** to **$465,981.54**.

Therefore, the total amount-in-controversy for the Plaintiff's unpaid minimum wage claim is approximately **$700,036.2 to $931,963.08**.

### 2.    Failure to pay overtime wages

Plaintiff alleges that he and other class members were "were not paid for all the time they worked, including overtime work." Ex. A (Complaint) ¶ 95. According to Labor Code section 510, any work in excess of eight hours in one workday, any work in excess of 40 hours in any one workweek, and the first eight hours on the seventh day of work must be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in

excess of 12 hours in one day or in excess of eight hours on any seventh day of a workweek must be compensated at double the regular rate. Cal. Labor Code 510.

The average hourly rate during the class period was approximately $21.17. Chosa Decl., ¶ 11. One-and-a-half times that rate is $31.76, and thus the average overtime premium would be $10.59 per hour.[3] Based on the same assumptions in the prior section about the amount of off-the-clock work that occurred, and assuming that only half that time (*i.e.*, 30 minutes) was required to be paid at an overtime rate,[4] the amount of unpaid overtime would be approximately **$175,239.50** (.5 hours * $10.59 (average overtime premium) * 438 putative class members * 75.56 weeks (average number of weeks proposed class members worked during the class period)). Even if we assume that only 75% of the class members worked 80 hours of overtime in a year, the potential back wages for this claim would be approximately **$131,629.68** in unpaid overtime wages (.5 hours * $10.59 (average overtime premium) * 329 putative class members * 75.56 weeks (average number of weeks proposed class members worked during the class period)).

Therefore, the total amount-in-controversy for the Plaintiff's unpaid overtime claim is approximately **$175,239.50 to $131,629.68**.

### 3.    Failure to provide required meal and rest periods

Plaintiff alleges that he and other class members were, at times, unable to take uninterrupted 30 minute meal periods or were required to work more than five hours before taking a meal period. Ex. A (Complaint) ¶¶ 15-16. Plaintiff also alleges he and other class members were, at times, required to work through their rest periods. *Id.* ¶¶ 17-18. Per California Labor Code Section 226.7, if an employer fails to provide an employee a meal or rest period, the employer must pay the employee the time worked plus an additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest period is not provided. Cal. Lab. Code § 226.7(b).

---

[3] The overtime premium is separated so as not to double-count damages for the minimum wage off-the-clock claim and the overtime off-the-clock claim.
[4] For an additional point of reference, in 2022, the proposed class worked an average of approximately 80 hours of overtime and approximately 4.9 hours of double time over the course of the year. Chosa Decl., ¶ 12.

CASE NO.                                    NOTICE OF REMOVAL OF CIVIL ACTION

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CA 94612
(415) 267-4000

There are currently 232 weeks in the alleged class period. Chosa Decl., ¶ 13. Assuming that each of the 438 putative class members missed one meal period and one rest period per week, the total amount-in-controversy is approximately **$1,401,254.16** for the missed break premiums *alone* (*i.e.*, not including any additional wages for the time worked) (438 putative class members x $21.17 average hourly rate of pay x 2 hours per workweek in meal and rest penalties x 75.56 weeks (average number of weeks worked during the class period). Even if we assume that only 75% of the putative class members incurred such damages, the amount-in-controversy is approximately **$1,052,540.22** (329 putative class members x $21.17 average hourly rate of pay x 2 hours per workweek in meal and rest penalties x 75.56 weeks (average number of weeks worked during the class period)).

Therefore, the total amount-in-controversy for Plaintiff's meal and rest period claims is approximately **$1,052,540.22** to **$1,401,254.16.**

### 4. Failure to properly calculate the regular rate for purposes of overtime, double time, meal and rest period premiums, and sick pay

Plaintiff alleges that Lagunitas "failed to accurately include the non-discretionary bonus compensation as part of the employees' 'regular rate of pay,'" for purposes of calculating overtime, double time, meal and rest period premiums, and sick pay. Ex. A (Complaint) ¶¶ 23-24.

In 2022, the proposed class worked an average of approximately 80 hours of overtime and approximately 4.9 hours of double time over the course of the year. Chosa Decl., ¶ 12. In addition, in 2022, the proposed class took an average of 29 hours of paid sick time. Chosa Decl., ¶ 14.

Assuming that (a) the alleged discretionary bonuses would have pushed the regular rate $1 per hour higher,[5] (b) each class member worked 2.04 hours of overtime per week (80 hours of overtime / 52 weeks + .5 hours of overtime (based on off-the-clock assumptions in prior sections)), (c) each class member worked .09 hours of double time per week (4.9 hours of double

---

[5] This would have the effect of making the overtime premium $1.50 higher and the doubletime premium $2 higher. As previously discussed, the average hourly rate during the class period was approximately $21.17. Chosa Decl., ¶ 11. Adding $1 to the regular rate makes the overtime premium $12.09, which is $1.50 higher than the overtime premium assumed in the overtime claim section. It also makes the double time premium $2 higher.

CASE NO.                                                    NOTICE OF REMOVAL OF CIVIL ACTION

time / 52 weeks in a year), (d) each class member was entitled to one meal period premium per week, one rest period premium per week (as discussed in prior sections), and (e) each class member took .6 hours of paid sick time per week (29 hours / 52 weeks in the year), the amount-in-controversy for Plaintiff's regular rate claim would be approximately **$193,276.44** ((overtime: $101,271.56 = $1.50 * 2.04 hours * 75.56 weeks * 438 putative class members) + (double time: $5,957.15 = $2 * .09 hours * 75.56 weeks * 438 putative class members) + (meal/rest premiums: $66,190.56 = $2 * 75.56 weeks * 438 putative class members) + (paid sick time: $19,857.17 = $1 * .6 hours * 75.56 weeks * 438 putative class members)).

Even if we assume that violations occurred with only 75% of the putative class members, the amount-in-controversy for Plaintiff's regular rate claim would be approximately **$145,177.95** (same math as prior paragraph, with 329 class members: overtime = $76,069.27; double time = $4,474.66; meal/rest premiums = $49,718.48; paid sick time = $14,915.54).

Therefore, the total amount-in-controversy for the regular rate claim is approximately **$145,177.95** to **$193,276.44.**

### 5. Failure to reimburse employees for required business expenses

Plaintiff alleges that he and the putative class members "were required to use their personal cell phones in order to perform work related tasks" but were not reimbursed for cell phone expenses. Ex. A (Complaint) ¶ 45. According to Labor Code Section 2802, an employee is entitled to be reimbursed by his or her employer "for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer."

Assuming that each putative class members was entitled to $25 per pay period for cell phone reimbursement, the total amount-in-controversy is approximately **$413,691** (438 employees * 37.78 pay periods * $25). Taking into consideration that some employees may not have incurred personal business expenses, the total amount-in-controversy for 75% of the class is approximately **$310,740.50** (329 employees * 37.78 pay periods * $25).

Therefore, the total amount-in-controversy for the business expenses claim is approximately **$310,740.50** to **$413,691.**

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CA 94612
(415) 267-4000

1    **6.    Failure to provide wages when due (waiting time penalties)**

2    Plaintiff's seventh cause of action seeks waiting time penalties under Labor Code Section

3    203, from the date their earned and unpaid wages were due, upon termination or resignation, until

4    paid, up to a maximum of thirty days. The penalty is measured at the employee's daily rate of pay

5    and is calculated by multiplying the daily wage by the number of days that the employee was not

6    paid, up to a maximum of 30 days. Cal. Labor Code 203.

7    Approximately 327 out of 438 proposed class members have ended their employment

8    with Lagunitas. Chosa Decl., ¶ 15. The average rate of pay for the putative class members was

9    $21.17 per hour. *Id.*, ¶ 11. Therefore, the total waiting time penalties under Labor Code 203 is

10    approximately **$1,661,421.60** (327 terminated employees * $21.17 average hourly rate * 8 hours

11    per day * 30 days). Conservatively, assuming only 75% of the putative class members that have

12    been terminated are owed unpaid wages, the total waiting time penalties under Labor Code 203 is

13    approximately **$1,249,876.80** (246 terminated employees * $21.17 average hourly rate * 8 hours

14    per day * 30 days).

15    Therefore the total amount-in-controversy for the waiting time penalties claim is

16    approximately **$1,249,876.80 to $1,661,421.60**.

17    **7.    Failure to provide accurate itemized wage statements**

18    Plaintiff's eighth cause of action seeks statutory penalties for Lagunitas allegedly

19    knowingly and intentionally providing inaccurate wage statements. Pursuant to Labor Code

20    Section 226(e)(1), an employee suffering an injury as a result of such a violation is entitled to

21    recover the greater of all actual damages or $50 per employee for the initial pay period in which a

22    violation occurs and $100 per employee for each violation in a subsequent pay period, not to

23    exceed an aggregate penalty of $4,000. See Cal. Lab. Code § 226(a), (e)(1).

24    Employees were paid bi-weekly and there are 26 pay periods per year. Chosa Decl., ¶ 16.

25    Proposed class members worked an average of 37.78 pay periods in the proposed class period.

26    *Id.*, ¶ 17. The penalty for the first violation would be $21,900 ($50 x 1 pay period x 438 putative

27    class members). The penalty for subsequent violations would be approximately $1,610,964 ($100

28

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CA 94612
(415) 267-4000

-12-

1  * 36.78 pay periods * 438 putative class members). The total amount-in-controversy would be

2  approximately **$1,632,864**.

3       Even if we assume only 75% of the putative class members received inaccurate wage

4  statements, the penalty for the first violation would be approximately $16,450 ($50 x 1 pay period

5  x 329 putative class members) and the penalty for subsequent violations would be approximately

6  $1,210,062 ($100 * 36.78 pay periods * 329 putative class members), and the total amount-in-

7  controversy would be approximately **$1,226,512**.

8       Therefore, according to Plaintiff's allegations, the total amount-in-controversy for his

9  wage statement claim is approximately **$1,226,512** to **$1,632,864**.

10                    **8.    Other claims and attorneys' fees**

11      In addition to these seven claims, Plaintiff seeks damages on behalf of himself and the

12  putative class for (1) unfair competition (Ex. A (Complaint) at ¶¶ 61-75), (2) failure to provide

13  gratuities (*Id*. at ¶¶ 39-43), and (3) unlawful deductions (*Id*. at ¶ 46). However, given the non-

14  specific nature of Plaintiff's allegations, Lagunitas cannot make reasonable assumptions based on

15  the allegations in the Complaint in order to calculate potential damages for purposes of

16  establishing the amount in controversy. As such, no damages from this claim are set forth as part

17  of the amount in controversy, but suffice it to say that any damages for these claims would only

18  increase the amount in controversy.

19      Finally, Plaintiff also seeks his attorneys' fees and costs (Ex. A (Complaint) at Prayer for

20  Relief ¶ 3.). Although Lagunitas denies Plaintiff's claim for attorneys' fees, for purposes of

21  removal, the Ninth Circuit uses a benchmark rate of twenty-five percent of the potential damages

22  as the amount of attorneys' fees. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D.

23  Cal. 2015) (noting that federal courts have consistently approved of attorney fee awards over the

24  25% benchmark, specifically at a rate of 30% or higher); *In re Quintus Sec. Litig.*, 148 F. Supp.

25  2d 967, 973 (N.D. Cal. 2001) (benchmark for attorneys' fees is 25% of the common fund).

26      Accordingly, the following is the minimum amount in controversy based on the

27  allegations alleged by Plaintiff:

28

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CA 94612
(415) 267-4000

-13-

| CLAIM | AMOUNT-IN-CONTROVERSY (100% Violation Rate) |
|---|---|
| Labor Code 1197 (Failure to Pay Minimum Wage) | $931,963.08 |
| Labor Code 510 (Failure to Pay Overtime) | $175,239.50 |
| Labor Code 226.7(a) (Failure to Provide Meal and Rest Periods) | $1,401,254.16 |
| Regular Rate | $193,276.44 |
| Labor Code 2802 (Failure to Reimburse Business Expenses) | $413,691 |
| Waiting Time Penalties | $1,661,421.60 |
| Labor Code 226(a) (Inaccurate Wage Statements) | $1,632,864 |
| Subtotal | $6,409,709.78 |
| Attorneys' Fees at 25% | $1,602,427.45 |
| **TOTAL** | $8,012,137.23 |

| CLAIM | AMOUNT-IN-CONTROVERSY (75% Violation Rate) |
|---|---|
| Labor Code 1197 (Failure to Pay Minimum Wage) | $700,036.20 |
| Labor Code 510 (Failure to Pay Overtime) | $131,629.68 |
| Labor Code 226.7(a) (Failure to Provide Meal and Rest Periods) | $1,052,540.22 |
| Regular Rate | $145,177.95 |
| Labor Code 2802 (Failure to Reimburse Business Expenses) | $310,740.50 |

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CA 94612
(415) 267-4000

-14-

| | |
|---|---|
| Waiting Time Penalties | $1,249,876.80 |
| Labor Code 226(a) (Inaccurate Wage Statements) | $1,226,512 |
| Subtotal | $4,816,513.35 |
| Attorneys' Fees at 25% | $1,204,128.34 |
| **TOTAL** | $6,020,641.69 |

Based on the foregoing, all requirements for CAFA removal are satisfied here.

## VI.    VENUE

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). As stated above, Plaintiff brought this action in California Superior Court, County of Sonoma. Thus, venue properly lies in the United States District Court for the Northern District of California. 28 U.S.C. §§ 84(a), 1441(a).

## VII.    CONCLUSION

Based on the foregoing, Lagunitas requests that this action be removed to this Court. If any question arises as to the propriety of removal of this action, Lagunitas respectfully requests the opportunity to present a brief and oral argument in support of its argument that removal is proper.

Respectfully submitted,

Dated:  January 17, 2023                    DENTONS US LLP


_____/s/ Erin N. Bass_____
Erin N. Bass
Jessica Peterson

Attorneys for Defendants
THE LAGUNITAS BREWING COMPANY

DENTONS US LLP
1999 HARRISON STREET, SUITE 1300
OAKLAND, CA 94612
(415) 267-4000

CASE NO.                                        NOTICE OF REMOVAL OF CIVIL ACTION